IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES SPENCE,                    :
           **Plaintiff,**          :
                         :    **No. 1:07-cv-00583**
                         :
         **v.**                 :    **Judge Sylvia H. Rambo**
                         :
**THE ESAB GROUP, INC.,**          :
           **Defendant.**          :
                         :

## M E M O R A N D U M

This case arises out of a single-vehicle accident that occurred on May 12, 2005, when Plaintiff Charles Spence's tractor-trailer overturned as he was rounding a curve in Hanover, Pennsylvania. At the time of the accident, Spence was hauling welding supplies manufactured by Defendant, The ESAB Group, Inc. ("ESAB"). These supplies were loaded onto Spence's trailer by employees of ESAB shortly before the accident. Spence asserts that ESAB was negligent in loading and securing the welding materials, and this negligence was the proximate cause of the accident. Before the court is ESAB's motion for summary judgment. That motion was fully briefed by the parties, and is ripe for disposition. For the reasons that follow, the court will grant ESAB's motion.

## I.       Background

### A.       Facts[1]

Plaintiff Charles Spence is a professional truck driver for Deep South Trucking. On May 12, 2005, Spence was involved in a single-vehicle accident when his tractor trailer overturned in Hanover, Pennsylvania. Defendant ESAB manufactures welding supplies, and was the shipper of the cargo that Spence was transporting at the time of the accident.

Spence has been a professional truck driver since 1999. He attended a professional truck driving school, obtained a Commercial Driver's License, and has an endorsement to transport hazardous materials. As a professional truck driver, Spence is familiar with the various techniques and methods used to secure cargo. Additionally, Spence is aware of federal regulations requiring a driver to ensure that his cargo is adequately secured, and admitted in his deposition that "it is his responsibility to make sure that the load is secure to his satisfaction period." (Doc. 53-2, Def.'s Ex. A, Charles Spence Dep. 27:3-5.)

Spence is a resident of Texas, and is aware that the Texas Commercial Motion Vehicle Drivers Handbook requires a driver to make sure that his cargo is properly secured, and specifies blocking and bracing as one of several techniques for securing cargo. Spence is also aware of several other methods of securing cargo,

---

[1]In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253, 259 (3d Cir. 1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to a genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

including: the use of load locks; load stars or cleats; ratchet straps; and the use of dunnage. Of these various securement devices, Spence has used two in the past to secure loads that he carried for ESAB: load locks and load stars. A load lock is a device that expands against the sides of the trailer, and is placed against the cargo to secure it. Although Spence does not dispute this description, he adds that a load lock only prevents forward and backward motion, but does not stop lateral or sideways shifting of cargo. (Doc. 61-9, Pl.'s Ex. G, Roger Allen Dep. 40:24-42:7.) A load star is a small metal cargo securement device that is placed between the bottom of the pallet and the deck of the trailer.

Prior to the accident, Spence had transported welding supplies from ESAB's Hanover facility on approximately five prior occasions. On each of these prior trips, Spence secured the loads using a load lock that was supplied by his employer. He also typically also used load stars, but on one occasion Spence only used his load lock and did not use any load stars.[2] On that occasion, when Spence arrived at his destination, he opened the door of his trailer and noticed that the load had shifted slightly during transit. Spence did not inform ESAB at that time that his load had shifted. He only reported it the day of the accident in question here, when he told an ESAB employee, Charles Gladhill; however, even then, Spence did not mention any specifics of the load shift. (Doc. 61-4, Pl.'s Ex. B, Charles Gladhill

---

[2]In his Response to ESAB's Statement of Material Facts, (Doc. 60), Spence admits to the averments of fact in ESAB's paragraph 19, stating that on one prior occasion Spence only used his load lock and not any load stars to secure his cargo. (Doc. 54, ¶ 19; Doc. 60, ¶ 19.) ESAB supports this averment with a citation to Spence's deposition where Spence says just that. (*See* Spence Dep. 61:9-62:6; 63:17-22.) However, earlier in his deposition, Spence stated that "on every load" before May 12, 2005, he used load stars to secure his cargo. (Spence Dep. 55:22.) Thus, it is unclear from the record whether or not Spence always used load stars. It is undisputed, however, that on each load prior to the May 12, 2005 incident, Spence did use *load locks* to secure his load. (Doc. 54, ¶ 17; Doc. 60, ¶ 17.)

Dep. 81:7-15.) Spence never experienced any load shift on the prior trips from ESAB when he used both load stars and load locks to secure the cargo.

Each time that he hauled welding supplies loaded by ESAB, Spence observed that the cargo was not blocked and braced. Spence complained about the lack of blocking and bracing the first time that he hauled for ESAB. Specifically, he indicated that he did not like the way that the welding supplies were loaded, but did not do anything to further secure the load other than using load locks and load stars. (Spence Dep. 53:20-54:10.) Spence acknowledges that he could have refused the load, but that he did not do so, and there were no problems with the load shifting on that particular occasion. (*Id.* at 54:24-55:4.) Moreover, after this initial experience, each time Spence hauled ESAB supplies, the cargo was loaded and packaged the same way. (*Id.* at 55:5-12.) Spence never asked ESAB to load the cargo differently.[3]

On May 12, 2005, Spence arrived at the ESAB facility and an ESAB employee placed the pallets of cargo onto Spence's trailer. Spence's cargo was individually packaged boxes and cartons of welding supplies stacked onto pallets and stretch wrapped. Spence's cargo was the same type of cargo, loaded and packaged the same way, that he had picked up and transported on several prior occasions. Spence was present as the cargo was loaded, and put load stars onto the bottom of the trailer. ESAB then stacked the pallets on top of the load stars placed by Spence. Unlike every previous occasion, Spence did not secure the cargo with a load lock because he did not have one with him. If Spence had a load lock with him

---

[3]Spence contends that by complaining about the way the load was secured he was implicitly asking that it be loaded differently. While this may have been what Spence thought at the time, it is undisputed that Spence never explicitly asked that the load be loaded differently.

on May 12, 2005, he would have used it.[4]  Despite not using a load lock, Spence did

not ask that ESAB load his trailer differently.  Instead, Spence inspected the cargo,

and accepted it by signing the bill of lading.[5]  Spence personally closed, locked, and

sealed his trailer door.  Spence then got into his cab and drove his tractor-trailer

away from ESAB's facility traveling the same route that he always took.  As Spence

drove his truck around a curve at the intersection of Third Street and State Route

116 in Hanover, Pennsylvania, his vehicle overturned causing him to be injured.

      Spence avers that he was told by an ESAB employee that his loads were

safe and secure, (Doc. 60 ¶ 42), however, he cites no support in the record for this

specific of a conclusion.  To the contrary, the portion of his deposition to which he

cites states that "ESAB assured me that they have never had a problem with any of

---

[4]Spence asserts that although he would have used his load lock on May 12, 2005, if he had it with him, this is immaterial because a load lock would not secure this type of cargo.  Spence cites to several portions of his expert's deposition in support of the proposition that load locks would not have secured this type of cargo.  (*See* Doc. 60, ¶ 35 (citing Doc. 61-9, Pl.'s Ex. G, Allen Dep. 24:11-29; 40:24-42:7).)  The citations Spence provides do not support the proposition that load locks would not have secured this type of cargo; rather, this portion of Allen's deposition merely describes his opinion that load locks only prevent forward and backward shifting, not lateral movement.  Spence's expert says nothing in his deposition about whether load locks would have secured this type of cargo.  It may or may not be the case that load locks completely and properly secure welding materials loaded in the manner loaded by ESAB, and the court makes no finding on this issue.  However, it is undisputed that on every previous occasion, Spence *did* use load locks—which of course, begs the question why he would have done so if he believed them to be superfluous—but that he did not do so on this occasion.  It is also undisputed that on every previous occasion it was Spence, not ESAB, who provided the load lock that he used.

[5]In his Response to ESAB's Statement of Undisputed Material Facts, (Doc. 60), Spence objects to ESAB's characterization that he inspected the cargo, and objects to ESAB's's reliance on portions of Spence's deposition to support this fact because those portions were nothing more than Spence reading his interrogatory answers.  (*See* Doc. 60 ¶ 37.)  As to the first issue, the court finds that Spence's deposition supports the fact that he inspected the cargo by watching it being loaded and by placing load stars on the trailer bed.  Spence's second objection, stripped of its gloss, is something like: "I object that they are using a statement from my deposition because the deposition testimony simply reaffirms a statement that I made in my answers to their interrogatories."  Obviously, it is permissible for ESAB to use this evidence to support its motion to summary judgment.

their loads." (Spence Dep. 54:7-9.) This assurance occurred at some point before August 2004, when Spence picked up his "very first load." (*Id.* 53:24.) It is undisputed that each time Spence picked up cargo from ESAB, he accepted, secured and transported the cargo, (Doc. 54 ¶ 44; Doc. 60 ¶ 44), and that no time did Spence reject the cargo or ask ESAB to load it differently. (Doc. 54 ¶ 42; Doc. 60 ¶ 42.)

## B.    Procedural History

On March 28, 2007, Spence filed his original complaint asserting claims of negligence, negligence per se, and gross negligence. (Doc. 1.) ESAB filed a motion to dismiss Spence's negligence per se claim on June 13, 2007. (Doc. 7.) After briefing, ESAB's motion to dismiss was granted on February 15, 2008. (Doc. 22.) ESAB filed its answer to Spence's complaint on February 29, 2009. (Doc. 23.) On July 15, 2008, Spence filed a motion to amend his complaint. (Doc. 26.) On September 25, 2008, ESAB filed a motion for summary judgment, brief in support, and statement of material facts. (Docs. 31-33.) Spence filed his brief in opposition to ESAB's motion for summary judgment, and statement of material facts on October 10, 2008. (Docs. 34-35.) On October 20, 2008, the court held a conference call with the parties, and issued an order granting Spence's motion to amend his complaint and suspending ESAB's motion for summary judgment. (Doc. 39.)

Spence filed an Amended Complaint on October 27, 2009. (Doc. 42.) Spence's Amended Complaint asserts five counts: (1) General Negligence; (2) Negligent Failure to Warn; (3) Breach of an Assumed Duty; (4) Fraudulent/Negligent Misrepresentation Claim; and (5) Gross Negligence. (*See id.*) ESAB filed an answer to Spence's Amended Complaint on November 13, 2007.

(Doc. 43.)  On January 16, 2009, ESAB filed a motion in limine to preclude Spence from introducing any evidence of an accident that occurred in March of 2005.  (Doc. 46.)  That motion was fully briefed by the parties, and on March 16, 2009, the court issued an order granting ESAB's motion in limine.  (Doc. 62.)

While the motion in limine was pending, on February 13, 2009, ESAB filed another motion for summary judgment, brief in support, and statement of material facts.  (Docs. 52-54.)  On March 2, 2009, Spence filed his brief in opposition to ESAB's motion for summary judgment, and his response to ESAB's statement of material facts.  (Docs. 60-61.)  ESAB filed its reply brief on March 19, 2009.  (Doc. 63.)  On March 25, 2009, Spence filed a motion for leave to file a sur-reply, (Doc. 64), which motion wad denied on April 20, 2009.  (Doc 68.)  ESAB's motion for summary judgment is now ripe for disposition.[6]

## II.       **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there

---

[6] This is ESAB's second motion for summary judgment.  Technically, ESAB's first motion for summary judgment, (Doc. 31), is still pending because it was suspended, but never ruled upon. Because ESAB chose to file a complete second motion for summary judgment on February 13, 2009, (Doc. 52), the court deems Document 31 moot.  The court will decide ESAB's motion for summary judgment based on the arguments and evidence submitted in Documents 52-54; 60-61; and 63.

is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Because subject matter jurisdiction in this case is based on diversity of citizenship, the court looks to the substantive law of Pennsylvania to determine the rights and obligations of the parties. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The law of the Commonwealth is declared by "its Legislature in a statute or by its highest court." *Id*. The Pennsylvania Supreme Court is the best authority on

Pennsylvania law, but when the Supreme Court has not issued a clear pronouncement in a particular area, the court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data" to determine what the law is. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661, 663 (3d Cir. 1980); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Opinions from lower Pennsylvania courts are not controlling, but they are entitled to significant weight when there is no indication that the Pennsylvania Supreme Court would rule otherwise.

## III.        <u>Discussion</u>

Spence's claims in his Amended Complaint all flow from the assertion that the May 12, 2005 accident would not have happened if the welding supplies loaded onto Spence's truck by ESAB would have been properly secured against shifting during transit, and that ESAB owed Spence a duty of care when loading the cargo to secure these materials. ESAB asserts that, as the shipper of the cargo, it did not owe any duty to Spence because under both federal regulatory law and common law, the driver, and not the shipper, is responsible for ensuring that cargo is adequately secured once it has been loaded. Spence states that the law is to the contrary, and that a shipper's duty extends to loading a truck safely to prevent roll-over accidents and resultant injury to the driver.

The crux of the dispute between the parties appears to be ESAB's insistence that it owed Spence no duty to secure the cargo, whereas Spence asserts

that ESAB did owe him a duty.  Thus, because the success of Spence's claims turns on whether ESAB owed Spence a duty of care, the court will address this issue first.[7]

## A.  <u>Duty of Care</u>

The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000).  In an industry as pervasively regulated as trucking, the Federal Motor Carrier Safety Administration ("FMCSA") regulations provide a helpful starting point for determining whether ESAB owed Spence a duty of care.

### 1. <u>Federal Regulation</u>

As ESAB points out in its brief, the FMCSA regulations squarely place the duty on the driver and carrier of a load to ensure that cargo loaded onto its trailer is adequately secured.  *See* 49 C.F.R. § 390-393.  Section 392.9 states, in relevant part:

> (a) *General*. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless–

---

[7]In any negligence claim, the plaintiff has the burden to prove: (1) a duty of care; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.  *See Morena v. S. Hills Health Sys.,* 462 A.2d 680, 684 n. 5. (Pa. 1983).  Whether a defendant owes a duty of care to a plaintiff is a question of law.  *Kleinknect v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).  Here, the court will address the question of duty first, and because it finds that ESAB owed Spence no duty there is no need to address the remaining prongs of Spence's negligence claim.

(1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

. . .

(b) *Drivers of trucks and truck tractors.* Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must–

(1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;

. . .

(4) The rules in this paragraph (b) do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it to inspect its cargo or to the driver of a commercial motor vehicle that has been loaded in a manner that makes inspection of its cargo impracticable.

49 C.F.R. § 392.9(a),(b) (emphasis in original). Section 393.100 states, in relevant part:

(a) *Applicability.* The rules in this subpart are applicable to trucks, truck tractors, semitrailers, full trailers, and pole trailers.

. . .

(c) *Prevention against shifting of load.* Cargo must be contained, immobilized or secured in accordance with this subpart to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected.

49 C.F.R. § 393.100 (emphasis in original). Read together, these regulations impose a duty on the driver to "properly distribute[] and adequately secure[]," 49 C.F.R. §

11

392.1(a), "cargo . . . to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected." *Id.* at § 393.100(c). Thus, under federal law, the responsibility for ensuring that cargo loaded onto a trailer is properly secured rests squarely on the driver, not the shipper. In fact, shippers, like ESAB, are not subject to the federal regulations. *Smith v. Northern Dewatering, Inc.,* Civ. No. 01-1948, 2004 U.S. Dist. LEXIS 2648, at *5-6 (D. Minn. Feb. 19, 2004).

Here, it is undisputed that Spence inspected the cargo after it was loaded, and he had the opportunity to secure the cargo as he saw fit, or, if he felt that the cargo was not adequately loaded and could not be adequately secured he could have rejected the load. Spence has pointed to no evidence that these regulations impose a duty of any kind on ESAB; whether it is a duty to safely load or a duty to secure, the regulations speak only of Spence's duty not ESAB's. Accordingly, the court finds that Spence has failed to demonstrate that ESAB owed him a duty under federal law.

## 2.  <u>Common Law</u>

Notwithstanding ESAB's status as a shipper, Spence asserts that ESAB is liable for the improper loading and failure to properly secure the cargo under a common law duty of care. Specifically, Spence asserts that "ESAB had a duty to load a common carrier truck in a safe manner." (Doc. 61, Br. in Opp. to Sum. J. at 12 of 38.) According to Spence, this duty extends to loading the truck in a manner that prevents roll-over accidents, and Spence cites *Kunkle v. Continental Transp. Lines*, 92 A.2d 690 (Pa. 1952) to support his proposition.

In *Kunkle*, a shipper loaded a 16,000 pound lithograph machine on one side of the trailer, and approximately 7,500 pounds of material on the other side of the trailer. *Id.* at 691. Although the driver was present at the time of the loading, he did not participate in the loading, and he did not inspect the truck after it was loaded. A jury found that the shipper had been negligent in loading the truck, and that the driver was not negligent for failing to inspect the load. The Supreme Court of Pennsylvania affirmed the verdict. *Id.* at 692. Thus, in *Kunkle* the court was in the position of reviewing a jury's finding of negligence on the part of the carrier, and did not discuss whether a duty existed by the carrier; instead, it simply assumed that a duty in fact existed and then went on to decide the issue before it which was whether the driver was contributorily negligent as a matter of law. The Pennsylvania Supreme Court ultimately concluded that the evidence did not "so clearly and unmistakably show[] plaintiff guilty of contributory negligence, that it could be declared as a matter of law." *Id.* Spence asserts that this case demonstrates that shippers owe a duty under Pennsylvania common law to safely load cargo, even when the driver fails to inspect. The court is not convinced that *Kunkle* can and should be read so broadly.

First, the Pennsylvania Supreme Court in *Kunkle* appears to assume, but never explicitly states, that the shipper owed the driver of the tractor-trailer a common law duty of care to load the cargo safely. However, *Kunkle*, is a pre-federal regulations case, and the court questions its continued vitality in light of those regulations. The regulations talk not only of a driver's responsibility to properly secure cargo, but also of a driver's responsibility to ensure that the cargo is "properly distributed." *See* 49 C.F.R. § 392.1(a). Second, nowhere does the *Kunkle*

13

court discuss which party is responsible for *securing* cargo once it has been loaded. Third, the facts of *Kunkle* are not analogous to the facts here. In *Kunkle*, the driver remained in his cab while the trailer was loaded. *Id.* at 691. Here, Spence was in the trailer at the time of the loading, and took measures to secure the cargo by placing load stars on the bed of the trailer before the pallets were loaded. Finally, at least one court has found that in light of the federal regulations discussed in Part III.A.1, *supra*, where a duty to secure cargo is placed squarely on the driver, it is not foreseeable that a driver would fail to remedy an alleged defect that he observes— such as the apparent improper loading that occurred in *Kunkle. See Decker v. New England Pub. Warehouse, Inc.,* 749 A.2d 762, 767 (Me. 2000) ("Most courts now accept the rationale . . . [that] carriers . . . take responsibility for the loads they carry, even if those loads have been improperly loaded by others.")

Additionally, *Kunkle* conflicts with the prevailing common law duty annunciated in *United States v. Savage Truck Line, Inc.*, 209 F.2d 442 (4th Cir. 1953). In that case, the Fourth Circuit developed the following test:

> The primary duty as to the safe loading of property is therefore on the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

209 F.2d at 445.

Although *Kunkle* has not been explicitly overruled, and thus, remains Pennsylvania law, the court is not convinced that it is squarely on point in case before the court here. Furthermore, while Pennsylvania courts and the Third Circuit

14

have not addressed the *Savage* rule, it has been consistently cited as the common law standard for the duty to secure cargo, *see e.g., Pierce v. Cub Cadet Corp.*, 875 F.2d 866 (6th Cir. 1989); *Armour Research Found. v. Chicago, R.I. & P.R. Co.*, 297 F.2d 176, 178 (7th Cir. 1961), and the court finds that consistency between the *Savage* rule and the federal regulations mitigates heavily in favor of the court adopting this standard.

Spence argues that the *Savage* rule does not affect the duty of ESAB because Pennsylvania is a comparative negligence state, and that "[e]ven if Charles Spence violated the regulations and the *Savage* rule . . . the common law negligence of ESAB must still be considered, and the fault for the accident apportioned between Spence and ESAB . . . [t]hus, ESAB is not entitled to judgment as a matter of law." (Doc. 61, Br. in Opp. to Mot. for Sum. J. at 24 of 38.) While it is beyond dispute that Pennsylvania is a comparative negligence state, the court is at a loss to comprehend Spence's incongruent logic. Both the federal regulations and the *Savage* rule impose duties on Spence to ensure that his cargo is properly secured, but nowhere has Spence pointed the court to any source of a duty on ESAB to secure the cargo.

Spence argues that the duty announced in *Kunkle*—to safely load cargo—is the one breached by ESAB, and that this is sufficient to allow the case to go to a jury. Fatal to Spence's argument, however, is that, even assuming a duty exists, he has come forward with no evidence that ESAB improperly loaded the

cargo; rather, the evidence only suggests that the cargo was improperly secured.[8]  In fact, Spence's own expert specifically acknowledged that the cargo was loaded onto the trailer correctly:

> Q:    So there's nothing in your report that indicates the cargo should have been placed on the trailer in a different manner.
>
> A:    No, sir.  Sir, I never said that it wasn't loaded correctly.  What I said wasn't done correctly, it wasn't blocked or braced.  This was the best way to do it because of the weight factor.

(Allen Dep. at 37:20-38:1.)  In *Kunkle*, the shipper unevenly distributed the weight of the cargo by placing 16,000 pounds of cargo on one side and only 7,500 pounds of cargo on the other side.  92 A.2d at 691.  Here, ESAB loaded its welding supplies

---

[8] While Spence interchangeably asserts in his Amended Complaint that Spence's negligence was its failure to secure and/or its failure to load, Spence appears merely to conflate these ideas as opposed to assert two separate duties by ESAB.  For instance, in his Amended Complaint, Spence asserts:

> [O]n May 12, 2005, Defendant did not properly secure the Spence's cargo. Defendant did not "block and brace" the cargo, did not suggest blocking and bracing, and did not inform Plaintiff that "load stars" were not sufficient to safely and adequately *secure* the cargo against lateral movement during transportation, even though Defendant knew that its *loading* methods had failed in the past.

(Doc. 42 ¶ 12 (emphasis added).)  At various other points throughout his Amended Complaint, Spence interchangeably asserts that the breach of duty is either a failure to secure or a failure to properly load or both.  The court reads Spence's Amended Complaint to assert that ESAB's duty to properly load the cargo extended to ensuring that the cargo was properly secured.  In fact, Spence says this : "The ESAB should have known that proper loading of the material was essential for the safety of Mr. Spence's person and property, and the proper loading of cargo includes and requires proper and safe securing of the cargo." (*Id.* ¶ 31.)  Unfortunately, Spence has come forward with no evidence supporting his factual assertion that ESAB improperly loaded the cargo.  At this stage on the proceedings, Spence cannot simply sit back and rest of the allegations in his Amended Complaint suggesting that they alone are sufficient to create a genuine issue of material fact for trial.  Instead, Spence must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  He has not done so here.

in a single row down the center of the trailer, a method that Spence's expert concedes was proper. (*See id.*)

Absent a duty of care—or a breach of that duty—ESAB cannot have been negligent, and there would be no fault for a jury to apportion. Put simply, Spence has failed to demonstrate that ESAB owed him a common law duty to ensure that the welding materials were properly secured,[9] and even if *Kunkle* imposed a duty that the cargo be properly loaded, Spence has failed to demonstrate that ESAB in any way breached such a duty.

Thus, because Spence has come forward with no evidence demonstrating that ESAB owed him a duty of care under federal regulatory or common law, Spence's claim for negligence fails as a matter of law. Accordingly, the court will grant ESAB's motion for summary judgment as to Spence's claim for general negligence.

### B. Negligent Failure to Warn

Spence's negligent failure to warn claim is premised upon the fact that two months prior to his accident, another vehicle loaded with similar welding supplies stacked in the same manner on wooden pallets also crashed. Spence argues

---

[9]In his brief in opposition to summary judgment, Spence argues that his case must go to a jury because there remains an issue concerning whether or not the defect in securement—in this case the lack of blocking and bracing—was latent and therefore within the exception provided by the federal regulations and *Savage.* While the court agrees that the latency of a defect is a question of fact, there is no dispute in this case that it was apparent to Spence that the cargo was not blocked and braced. On a prior occasion, Spence complained to ESAB employees about the lack of blocking and bracing on his loads, (Spence Dep. 53:20-54:10.), and it is undisputed that on that date of the accident Spence's trailer was loaded exactly the same way as it always was. Moreover, Spence's expert agrees that whether blocking and bracing was present would be observable to the driver. (Allen Dep. at 34:19-35:3.) Thus, the court finds that there is no genuine issue of material fact concerning Spence's awareness of the fact that his load was *not* blocked and braced, and thus the alleged defect was not latent.

that ESAB had actual knowledge that "the reason that [] trailer had overturned was that the improperly secured cargo had shifted." (Doc. 42 ¶ 24.) As an initial matter, a claim alleging that ESAB failed to warn Spence of the risk of a known harm, like any negligence claim, requires the existence of a duty owed by ESAB to Spence. *Krentz v. CONRAIL*, 910 A.2d 20, 28 (Pa. 2006). The court has already determined that ESAB did not owe Spence a duty under either federal regulations or common law. Thus, for Spence's negligent failure to warn claim to prevail, he must demonstrate that ESAB knew or had reason to know that the method of loading chosen by ESAB was dangerous. *See Overbeck v. Cates,* 700 A.2d 970, 973 (Pa. Super. Ct. 1997) (there is no duty to warn where a defendant did not have notice of dangerous conditions). Here, Spence argues that an accident occurring two months prior to his accident should have put ESAB on notice that its method of loading was dangerous.

On March 16, 2009, the court issued an order granting ESAB's motion in limine. (Doc. 62.) Pursuant to this order, Spence is prohibited from introducing any evidence or referring to prior accidents involving vehicles hauling cargo obtained from ESAB. Because Spence is prohibited from introducing this evidence at trial, it cannot form the basis of his objection to the entry of summary judgment. The court did not believe that the circumstances surrounding this accident were at all relevant to Spence's claims because there was no evidence that ESAB was ever informed that the March accident was in any way caused by improper loading or securing of the cargo. Quite simply, Spence has come forward with no admissible evidence suggesting that ESAB had any knowledge that its products or the manner in which it loaded trucks was dangerous. Absent this sort of knowledge, Spence's

failure to warn claim fails as a matter of law, and ESAB is entitled to summary judgment. *See Overbeck,* 700 A.2d at 973.

## C.    Breach of an Assumed Duty

In addition to a general negligence claim, Spence asserts that ESAB is liable because it assumed a duty to properly secure cargo because it placed it onto the trailer. The court is not convinced that there is an arguable distinction between this claim and Spence's general negligence claim. As to Spence's general negligence claim, the court has found that ESAB did not owe Spence a duty to ensure that his cargo was secured. *See* Part III.A., *supra*. Since there was no duty at law, the assumption of a tort duty is governed by the Restatement (Second) of Torts § 323. *Henry v. First Fed. Sav. and Loan Ass'n of Greene County*, 459 A.2d 772, 775 (Pa. Super. Ct. 1983). The Restatement (Second) of Torts § 323 states, in pertinent part: "one who undertakes . . . for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking. . . ." Nothing of the sort happened in this case.

The mere fact that ESAB loaded the cargo does not in and of itself create a duty of care. Even assuming that ESAB had a duty of care to safely load the cargo, there is no evidence that they breached this duty. Spence's expert testified at his deposition that ESAB properly loaded the cargo, (*See* Allen Dep. at 37:20-38:1), and there is no other evidence before the court even intimating that the cargo was improperly loaded. The court has already determined the ESAB did not owe Spence

a duty to secure the cargo after it was loaded. That duty was Spence's and Spence's alone. Spence has come forward with no evidence to support his claim that ESAB assumed a duty of care to properly secure the cargo when it chose to load it. Absent this duty, Spence's claim fails as a matter of law, and ESAB is entitled to summary judgment.

## D. Fraudulent/Negligent Misrepresentation

Spence also asserts a claim for Fraudulent/Negligent Misrepresentation. Specifically, Spence asserts that ESAB and its employees knowingly and recklessly misrepresented to Spence that the use of load stars was a sufficient method of securing cargo so as to prevent its shifting. A claim for intentional misrepresentation requires a plaintiff to prove: (1) a representation; (2) material to the transaction at hand; (3) made falsely, with the knowledge of its falsity or recklessness as whether it was true or false; (4) with the intent of misleading another to rely upon it; (5) justifiable reliance on the misrepresentations; and (6) the resulting injury was caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

Spence points to two instances of ESAB's alleged misrepresentations. First, on the date of Spence's first pick-up from ESAB he complained that he did not like the way that ESAB had loaded the cargo. In his deposition, Spence explained:

> A:  [O]n the very first load that I ever picked up from ESAB I did complain.
>
> Q:  What did you say? Do you remember what was your complaint?
>
> A:  Yes, I do remember. I told them that I did not like the way that they loaded the trailer. I didn't like the small pallets. I didn't like it being down the center

of the trailer with no blocking, no bracing, nothing but the stars. I did say something about it, *and ESAB assured me that they had never had a problem with any of their loads, so I took it that they knew better than I did and I hauled the load.*

(Spence Dep. at 53:24-54:10 (emphasis added).) At the time of his deposition, Spence could not remember who had made this representation, except that it was a male forklift driver. (*Id.* at 54:19-23.) Spence argues that prior to this forklift driver making this statement—that ESAB had never any problems with their loads in the past—at least four accidents had occurred, and that ESAB should have known that this statement was false. There is no evidence before the court that any of the accidents mentioned by Spence were caused by problems with the manner in which the cargo was loaded or secured as opposed to the multitude of other potential causes of these accidents. At this stage of the proceedings, Spence must come forward with admissible evidence that would allow a jury to conclude that ESAB knew or should have known that its statement was false. Simply demonstrating that there were prior accidents, without demonstrating that those accidents were caused by a loading or securing problem, is insufficient as a matter of law because no jury could reasonably conclude that the statement made by this unknown forklift driver was false. Even if it were false, there is no evidence before the court from which a reasonable jury could conclude that the unnamed, male forklift driver knew or should have known that it was false. Spence's evidence on this point is simply too vague and inferential for the court to conclude that it creates a genuine issue of material fact.

Second, Spence argues that ESAB impliedly misrepresented the safety of its load because on the day of the accident, Spence told the loader that he had

some load shifting on an earlier trip, and the loader pulled several pallets off to allow Spence to put load stars down to further secure the cargo. In his brief, Spence states that "[b]y selecting the number of pallets removed the loader was non-verbally asserting that the load would be safe with that level of load star securement," (Doc. 61, Pl.'s Br. in Opp. to Mot. for Sum. J. at 30 of 38.) Neither party cites any case law, nor could the court find any on its own, for or against the proposition that an action like the kind taken by the ESAB employee loading Spence's pallets constitutes a "representation" for purposes of the tort of negligent misrepentation.

However, the court fails to see in this context how the mere act of removing pallets, *at the behest of Spence*, so that Spence could put down load stars would constitute a representation by ESAB that the number of pallets removed, and the number of load stars placed, constitutes a representation of anything. Even if it did, Spence has a come forward with nothing other than conjecture that this action or representation was false, or, assuming that it was false, that the forklift driver who did all of this knew that it falsely implied that the load was safe but that he did it anyway with the intent of misleading Spence into driving off without further securing the cargo.

Because Spence has failed to produce even a scintilla of evidence to support the elements of his fraudulent/negligent misrepresentation claim, it fails as a matter of law, and the court will grant ESAB's motion for summary judgment on this claim.

### E. Gross Negligence

In addition to all of his other claims, Spence asserts a claim for gross negligence in his Amended Complaint. Like any negligence claim, however, a claim of gross negligence must be based on a duty owed to Spence. *See Henry v. First Fed. Sav. & Loan Ass'n.,* 459 A.2d 772, 774. Spence has come forward with no evidence demonstrating that ESAB owed him a duty of care under federal or common law. Since Spence's claim for negligence fails as a matter of law, so does his claim for gross negligence. *Id.* Accordingly, the court will grant ESAB's motion for summary judgment on Spence's gross negligence claim.

## IV. Conclusion

In accordance with the foregoing, the court will grant ESAB's motion for summary judgment on all counts of Spence's Amended Complaint. Spence has come forward with no evidence from which a reasonable jury could conclude that ESAB owed him any duty of care. Absent a duty, all of Spence's claims fail as a matter of law. An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated: October 13, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHARLES SPENCE,**              :
                                 :
    **Plaintiff,**           :
                                 :   **No. 1:07-CV-00583**
                                 :
    **v.**                  :   **Judge Sylvia H. Rambo**
                                 :
**THE ESAB GROUP, INC.,**        :
                                 :
    **Defendant.**           :
                                 :

### O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment, (Doc. 52), is **GRANTED**. The clerk of court shall enter judgment in favor of The ESAB Group, Inc., and against Charles Spence on all counts of Plaintiff's Amended Complaint, and close the case.

                                        s/Sylvia H. Rambo
                                   United States District Judge

Dated:  October 13, 2009.